\IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHERYL TYRON                                                                           PLAINTIFF

v.                                     NO. 4:06CV01320 HDY

MICHAEL J. ASTRUE,                                                                     DEFENDANT
Commissioner of the Social
Security Administration

## MEMORANDUM OPINION AND ORDER

BACKGROUND. The record reflects that in February of 1994, plaintiff Cheryl Tyron ("Tyron") filed an application for disability insurance benefits pursuant to the Social Security Act ("Act"). Her application was denied initially and upon reconsideration. She next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In November of 1995, the ALJ found that although Tyron could not return to her past work, she retained sufficient residual functional capacity to perform light work and there was other work she could perform. See Transcript at 262-272. The ALJ therefore concluded that Tyron was not disabled within the meaning of the Act. Tyron appealed the ruling of the ALJ to the Appeals Council. The ruling was affirmed by the Appeals Council, and the ruling became the final decision of the Commissioner of the Social Security Administration ("Commissioner").

Tyron thereafter sought judicial review in the United States District Court for the Eastern District of Arkansas. See Novak v. Apfel, LR-C-96-473.[1] In February of 1998, the Court reversed the Commissioner's final decision because of an error in assessing Tyron's credibility. The Court specifically found the following:

> The [Commissioner] opined that the objective medical evidence, [Tyron's] daily activities, and the conservative medical treatment she received, among other things, dictated the credibility conclusion. We find that the [Commissioner] erred in dramatically discounting [Tyron's] credibility. The [Commissioner] relied heavily on the medical reports of Dr. Jobe and Dr. Collins. Dr. Jobe indicated [Tyron] might be a symptom magnifier, and Dr. Collins found no anatomical reason [Tyron] could not fully extend her left arm. ... The reliance upon the reports of these physicians is misplaced. [Tyron] was involved in a motor vehicle accident on Christmas Day of 1992. The record shows [she] consistently sought treatment in the years following the incident. She saw at least fourteen physicians and two chiropractors between the time of the accident and September of 1994. The statements of Drs. Jobe and Collins upon which the [Commissioner] relies are, in context, isolated. The objective medical evidence, when viewed as a whole, shows [Tyron] has significant and persistent pain problems. The [Commissioner] also overstated [Tyron's] ability to perform daily activities. In summary, the [Commissioner] erred in assessing [Tyron's] credibility. It follows that the [Commissioner] erred in failing to obtain the testimony of a vocational expert, ...

See Transcript at 355-356. The Court remanded the proceeding to the Commissioner for the purposes of re-assessing Tyron's credibility and obtaining vocational expert testimony addressed to the issue of whether there was work in the national economy that she could perform.

---

[1] At the time of the judicial review, Tyron's last name was apparently Novak.

On remand, the ALJ conducted a second administrative hearing and eventually issued a ruling adverse to Tyron. She appealed the ruling to the Appeals Council where it was affirmed. The ruling of the ALJ thus became the Commissioner's final decision.

In September of 2006, Tyron commenced the proceeding at bar. In this proceeding, she challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012.

THE COMMISSIONER'S FINDINGS. In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to identify his findings. The record reflects that he made his findings pursuant to the five step sequential evaluation process. At step one, he found that Tyron has not engaged in substantial gainful activity since the alleged onset date. At step two, he found that she was severely impaired as a result of "cervical strain, myofascial pain syndrome, and left lateral epicondylitis." See Transcript at 32. At step three, the Commissioner found that Tyron did not have an impairment or impairments listed in, or medically equal to one listed in, the regulations. He then considered her residual functional capacity and found that she could perform unskilled light work, specifically finding the following:

> [Tyron] is physically limited in her ability to: lift and carry a maximum of more than 20 pounds; frequently lift and carry more than 10 pounds; stand or walk with normal breaks for more than about 6 hours in an 8-hour workday; sit with normal breaks for more than about 6 hours in an 8-hour workday.  She has no postural or manipulative limitations.

See Transcript at 33.  In making the foregoing findings with regard to Tyron's residual functional capacity, the Commissioner found that "[her] testimony and subjective allegations of chronic pain in her neck, left shoulder, and left elbow are not borne out by the overall record and are found not to be credible to the extent alleged."  See Transcript at 32.  At step four, he found that she did not retain sufficient residual functional capacity to perform her past relevant work as a truck driver.  At step five, he solicited the testimony of a vocational expert.[2]  On the basis of the vocational expert's testimony, the Commissioner found that there was other work Tyron could perform.  Thus, he concluded that she was not disabled within the meaning of the Act.

---

[2]

The Commissioner posed the following hypothetical question to the vocational expert:

> Giving consideration to [Tyron's] age, education, and previous work history, please state your opinion whether there exists nationally or regionally or locally jobs which can be done within the limits I will set.  Limit your consideration to work which is normally light or sedentary from an exertional standpoint.  And limit your consideration to work which is unskilled in nature and which is of a simple variety because of concentration limitations caused by discomfort and by limiting to simple matters.  I refer to jobs which require the doing of nothing more than simple repetitive tasks where the directions are simple and direct, concrete and direct and where interpersonal communication and interaction is not complex either; consisting of nothing more than the taking of the simple concrete directions.  Given those limits, are there jobs?  If so, say what they are and their incidence.

See Transcript at 442-443.  The vocational expert testified that "[w]ithin those limits, [Tyron] could do any number of jobs that are unskilled, light work."  See Transcript at 443.

TYRON'S ASSERTIONS. Are the Commissioner's findings supported by substantial evidence on the record as a whole? Tyron thinks not. She maintains that the Commissioner's hypothetical question was defective for the following reasons: (1) it omitted "several work-related limitations," see Document 13 at 19; and (2) it was based on a "faulty credibility assessment," see Document 13 at 21.

VOCATIONAL EXPERT TESTIMONY. "'[T]estimony from a vocational expert is substantial evidence [on the record as a whole] only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" See McKinley v. Apfel, 228 F.3d 860, 865 (8th Cir. 2000) [quoting Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997)]. The question need not contain every impairment alleged by the claimant, see Haggard v. Apfel, 175 F.3d 591 (8th Cir. 1999), but it must include the impairments supported by substantial evidence on the record as a whole. See Goff v. Barnhart, 421 F.3d 785 (8th Cir. 2005).

THE ALLEGED OMISSION OF SEVERAL WORK-RELATED LIMITATIONS. Tyron first maintains that the Commissioner's hypothetical question was defective because it omitted several work-related limitations. She specifically maintains that her "postural and manipulative limitations [i.e., her arm, shoulder, and neck pain that allegedly significantly limits her ability to reach and handle], chronic and severe headaches, depression, and sleeplessness and fatigue are significant non-exertional limitations that should have been considered by the [vocational expert]." See Document 13 at 21.

The record reflects that the Commissioner posed a hypothetical question that omitted several limitations. With one exception, substantial evidence on the record as a whole supports the Commissioner's findings as to the limitations alleged by Tyron and thus, with one exception, his hypothetical question was correctly phrased. Substantial evidence on the record as a whole does not, however, support his finding as to her headaches and, for that reason, his hypothetical question was not correctly phrased.

The record reflects that Tyron was involved in an automobile accident during December of 1992. She testified during the first administrative hearing that she began having headaches shortly after the accident. She testified that her headaches occur three or four times a week; last "[s]ometimes two, sometimes three days at a time;" and are accompanied by blurred vision. See Transcript at 404.

It is true that Tyron had a negative computed axial tomography, or CAT, scan in the fall of 1994. Her headaches were not discounted by the attending physician, though; they were instead diagnosed as "tension headaches." See Transcript at 225. During the same period, Dr. Kevin Collins opined that Tyron "continues to have significant headaches as they relate [to] her myofascial pain" and that "her eyes get blurry with her headaches." See Transcript at 197. A second physician noted in a series of progress notes for the period from April of 1994 through October of 1995 that Tyron was experiencing headaches. See Transcript at 279-289. The record also reflects that she received numerous treatments and prescription medications for her headaches.

On the basis of the foregoing, substantial evidence on the record as a whole does not support the Commissioner's finding as to the severity and/or length of Tyron's headaches. Specifically, substantial evidence on the record as a whole does not support his decision to discount the severity and/or length of her headaches and omit them from his hypothetical question. For that reason, it was not correctly phrased. A remand is therefore necessary so that the Commissioner can re-assess the severity and/or length of Tyron's headaches. A correct assessment of their severity and/or length is critical because they directly impact her ability to hold gainful employment.[3]

---

[3]

The record reflects that on the heels of the Commissioner's hypothetical question, Tyron's attorney asked the vocational expert a series of hypothetical questions, one of which was with regard to Tyron's headaches. That question, and the vocational expert's answer, were as follows:

> Q. ... If we have an individual who is limited to sitting 20 minutes at a time 4 hours total in a day, 30 minutes standing at a time, 4 hours during the day, walk quarter mile at a time and is limited to no twisting or turning, would that change your assessment?
>
> A. She would be able to do the light factory jobs I had listed because you could sit or stand with those jobs.
>
> ...
>
> Q. Okay. And if we add a person who suffers, and this is from the older testimony, from headaches that last – I'm sorry, I have to look through my notes — three to four of these types of headaches per week such that they cause intermediate blurriness and nausea, would that change your assessment? Let's say they last an hour a day, 3 to 4 times a week, headaches which would include nausea and blurriness.
>
> A. Okay. If the nausea and blurriness last for an hour, --
>
> Q. Yes.
>
> A. – 3 to 4 times a week during a normal working week, yes, sir, that's going to prevent her from doing jobs at a competitive setting.

See Transcript at 443-445.

<u>THE COMMISSIONER'S CREDIBILITY ASSESSMENT</u>. Tyron additionally maintains that the Commissioner's hypothetical question was defective because it was based on a "faulty credibility assessment." <u>See</u> Document 13 at 21. She specifically maintains that he improperly discounted the severity of her pain despite a previous finding by the Court that she has significant and persistent pain problems and despite medical evidence to the contrary.

The record reflects that the Commissioner initially found Tyron's complaints of pain to be less than fully credible. The Court later found that his finding was not supported by substantial evidence on the record as a whole because she has significant and persistent pain problems. Upon remand, he again found her complaints of pain to be less than fully credible. For the reasons that follow, the Court finds that his subsequent finding as to her complaints of pain is not supported by substantial evidence on the record as a whole.

The Court begins by re-affirming the earlier finding that Tyron has significant and persistent pain problems. The record from the second administrative hearing contains nothing to undermine the earlier finding. What, then, supports the Commissioner's finding that her complaints of pain are not fully credible? It appears that his finding as to her complaints of pain was built primarily upon the following three matters: (1) a lack of objective medical evidence, (2) her failure to seek more substantive medical treatment, and (3) her daily activities.

With regard to the medical evidence, it is true that the record contains test results that were largely negative. Nevertheless, the record contains a medical explanation for much of the pain Tyron experiences. The Commissioner found, and the record supports, that she suffers from myofascial pain syndrome, which the Court understands to be pain and/or inflammation in the body's soft tissues. See www.webmd.com/pain-management/guide/myofascial-pain-syndrome. Additionally, one physician, Dr. Mark Jobe, diagnosed Tyron as suffering from fibromyalgia, see Transcript at 195, and a second physician, Dr. Kevin Foley, diagnosed her as suffering from fibrositis, see Transcript at 212.[4] Their diagnoses certainly lend credence to a medical explanation for her pain.

With regard to Tyron's failure to seek more substantive medical treatment, the record reflects that a host of physicians and/or chiropractors have attempted to treat her complaints of pain.[5] They have done so with an array of treatments. It is true that she abandoned some of the treatments, but she appears to have done so because they did not help. The Commissioner faulted her for failing to seek additional treatments. He failed to state, however, what additional treatment she should have pursued.

---

[4] Although it is not clear whether myofascial pain syndrome and fibromyalgia are, as Tyron alleges, one and the same, the medical literature establishes that the former can be quite painful.

[5] The record reflects that between December of 1992 and September of 1994, she was seen by at least fourteen physicians and two chiropractors.

With regard to Tyron's daily activities, the Court found in the initial review of the Commissioner's final decision that he had overstated her ability to perform daily activities. Upon remand, his finding on that issue mirrored in large part the finding he made in initially considering her application for benefits.[6] In light of that fact, it is difficult to see how he followed the directive of the Court and properly stated her ability to perform daily activities.

For these reasons, the Commissioner's finding as to Tyron's complaints of pain is not supported by substantial evidence on the record as a whole. A remand is therefore necessary so that he can assess her credibility for a third time and determine the extent to which her complaints of pain impact her residual functional capacity. If he determines that her complaints of pain are supported by substantial evidence on the record as a whole, he should include them in his hypothetical question.

---

[6]

In the Commissioner's first written decision, he opined the following:

> [Tyron] stated that she tries to clean her ... trailer 3 times a week but because she has great difficulty using her left arm, it takes 3-4 hours to clean the small trailer. She tries to cook. She feeds the cat, dog and goat. She does word search puzzles for 10 minutes, watches television for a little while, and plants flowers. She shops three times a month. She drives 2 miles to visit her mother.

See Transcript at 269. In his second written decision, he found the following:

> [Tyron's] testimony and Exhibit 12 establish that her daily activities included: cleaning the house trailer; preparing meals; shopping for groceries; planting flowers; driving her car; and visiting her mother on a regular basis.

See Transcript at 27.

SUMMARY.  The Commissioner's findings as to the severity and/or length of Tyron's headaches and his assessment of her complaints of pain are not supported by substantial evidence on the record as a whole.  As a result, his hypothetical question was not correctly phrased.  Upon remand, he shall re-assess the severity and/or length of her headaches and re-assess her credibility.  If he determines that her headaches and complaints of pain are supported by substantial evidence on the record as a whole, he should include them in his hypothetical question.

Given the foregoing, then, the Commissioner's decision is reversed, and this proceeding is remanded.  This remand is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Tyron.

IT IS SO ORDERED this __13__ day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE